No. 25-10758

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Outsourcing Facilities Association; North American Custom Laboratories,
L.L.C. Partners, doing business as Farmakeio Custom Compounding,

*Plaintiffs-Appellants*,

v.

Food & Drug Administration; Dr. Marty Makary, Commissioner, U.S. Food
and Drug Administration,

*Defendants-Appellees*, and

Novo Nordisk, Inc.,

*Intervenor-Appellee*.

On Appeal from the United States District Court
For the Northern District of Texas, No. 4:25-cv-00174-P
The Honorable Mark T. Pittman

## Opening Brief of Appellants

TY DOYLE
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002
(713) 646-1374
tgdoyle@bakerlaw.com

ANDREW M. GROSSMAN
RICHARD B. RAILE
KRISTIN A. SHAPIRO
MARC N. WAGNER
BENJAMIN D. JANACEK
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Ave., N.W.
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judge of this court may evaluate possible disqualification or recusal.

Further, pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel of record certifies that there are no corporations that are parents of any Petitioner or that own stock in the Petitioners.

**A.   Plaintiffs-Appellants**

Outsourcing Facilities Association

North American Custom Laboratories LLC Partners d/b/a Farmakeio Custom Compounding

**B.   Attorneys for Plaintiffs-Appellants**

Tyler Geoffrey Doyle
Baker & Hostetler LLP
811 Main Street, Suite 1100
Houston, TX 77002

Andrew Michael Grossman
Richard Bryan Raile
Kristin Shapiro
Marc N. Wagner
Benjamin D. Janacek
Baker & Hostetler LLP
1050 Connecticut Avenue N.W., Suite 1100
Washington, D.C. 20036

Jeremy B. Kustoff
Baker & Hostetler LLP
2850 North Harwood, Suite 1100
Dallas, TX 75201

Brian Burgess
Goodwin Procter LLP
1900 N Street N.W.
Washington, D.C. 20036

## C.    Defendants-Appellees

United States Food and Drug Administration

Dr. Marty Makary

## D.    Attorneys for Defendants-Appellees

Daniel Tenny
Caroline W. Tan
U.S. Department of Justice
950 Pennsylvania Ave. N.W.
Washington, D.C. 20530

Oliver McDonald
David Hixon
Kimberly Ruthsatz Stephens
DOJ Civil Division
450 5th Street, N.W., Suite 6400
Washington, D.C. 20001

## E.    Intervenor-Appellee

Novo Nordisk Inc.

## F.    Attorneys for Intervenor Novo Nordisk Inc.

Benjamin C. Block
Thomas R. Brugato
Covington & Burling LLP
One CityCenter
850 10th St., N.W.
Washington, D.C. 20001

Trevor Carolan
Bowman & Brooke LLP
5850 Granite Parkway, Suite 900

Plano, TX 75024

H. Dustin "Dusty" Fillmore
Charles W. "Chad" Fillmore
The Fillmore Law Firm
201 Main St., Suite 700
Fort Worth, TX 76102

**G.    Amicus**

NP 2 Go, Incorporated

**H.    Attorney for Amicus NP 2 Go, Incorporated**

Julia Christine Cantu
Marti Law Group
15 N. Main. St.
West Hartford, CT 06107

**I.    Interested Third Parties**

Southwest Home Solutions LLC

FarmaKeio AR LLC

FarmaKeio Outsourcing LLC

Evexias Holding Co LLC

Sutherland Solutions LLC

JL Graves Holdings LLC

JWRD Holdings LLC

Harris Portal Solutions LLC

Nilus LLC

Daniel DeNeui

Michael Cole

Justin Graves

Cody Boatman

Robert Harris

Paul Jowell

*/s/ Andrew M. Grossman*

Andrew M. Grossman
*Attorney of record for Plaintiffs-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

This is a case of substantial public importance. At issue are GLP-1 drugs that treat serious medical conditions, which are in high demand that cannot be satisfied. Congress provided that, during shortages, pharmacies and outsourcing facilities may compound drugs to help meet demand. But the Food and Drug Administration declared the shortage over without notice-and-comment rulemaking and for arbitrary reasons lacking substantial evidence. The Court's intervention is necessary to secure continued supply of needed medicines and to clarify the operation of the statutory drug-shortage regime. Appellants respectfully request oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons.........................................................i

Statement Regarding Oral Argument ........................................... v

Table of Contents.................................................................... vi

Table of Authorities ............................................................... viii

Introduction ............................................................................ 1

Statement of Jurisdiction ......................................................... 3

Statement of Issues.................................................................. 3

Statement of the Case.............................................................. 4

    A. Congress Authorizes Compounding to Ensure Patient Needs
    Are Met During Drug Shortages ....................................... 4

    B. FDA Declares Semaglutide in Shortage and Then Resolves
    the Shortage, Relying on Novo Nordisk's Evidence While
    Waving Away All Other Evidence ...................................... 7

    C. The District Court Upholds the Delisting Action ............................. 9

Summary of the Argument ....................................................... 11

Standard of Review................................................................. 12

Argument .............................................................................. 13

I.    The Delisting Action Was Unlawfully Promulgated Without
    Notice-and-Comment Rulemaking .................................... 13

    A. The Delisting Action Is a Rulemaking........................... 13

    B. The Delisting Action Is Not the Proper Subject of Adjudication ..... 20

II.   The Delisting Action Is Arbitrary and Without a Reasoned Basis........ 24

    A. ███████████████████████████████ ........... 25

B. FDA Arbitrarily Resolved the Shortage in the Face of Evidence That a Shortage Persists .................................................................. 35

    1. ███████████████████████████████ ................... 35

    2. ████████████████████████████████ ....................... 39

    3. █████████████████████████████████ ..................... 41

C. FDA Improperly Dismissed Other Evidence of a Shortage ............. 48

Conclusion ................................................................. 51

# TABLE OF AUTHORITIES

## Cases

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
  522 U.S. 359 (1998) ............................................................................ 33

*Amin v. Mayorkas*,
  24 F.4th 383 (5th Cir. 2022) ............................................................ 24

*Anne Arundel Cnty. v. U.S. EPA*,
  963 F.2d 412 (D.C. Cir. 1992) ......................................................... 16

*Apter v. Dep't of Health and Hum. Servs.*,
  80 F.4th 579 (5th Cir. 2023) ............................................................ 14

*Ass'n of Data Processing Serv. Orgs., Inc.. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  745 F.2d 677 (D.C. Cir. 1984) ......................................................... 17

*Bonumore, Inc. v. U.S. FDA*,
  747 F. Supp. 3d 211 (D.D.C. 2024) ................................................ 46

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988) ........................................................................... 22

*Chamber of Com. of United States v. U.S. SEC*,
  85 F.4th 760 (5th Cir. 2023) ............................................................ 38

*Chamber of Com. of U.S. of Am. v. U.S. Dep't of Lab.*,
  885 F.3d 360 (5th Cir. 2018) ...................................................... 24, 38

*Circus Circus Casinos, Inc. v. NLRB*,
  961 F.3d 469 (D.C. Cir. 2020) ......................................................... 34

*Citizens for Resp. and Ethics in Washington v. FEC*,
  993 F.3d 880 (D.C. Cir. 2021) ......................................................... 17

*City of Arlington, Tex. v. FCC*,
  668 F.3d 229 (5th Cir. 2012) .................................................. 20, 21, 22

*Corrosion Proof Fittings v. EPA*,
  947 F.2d 1201 (5th Cir. 1991), *opinion clarified* (Nov. 15, 1991) ................. 32

*Ctr. for Biological Diversity v. Everson,*
  435 F. Supp. 3d 69 (D.D.C. 2020) .......................................................... 16

*Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.,*
  698 F. Supp. 3d 39 (D.D.C. 2023) .......................................................... 16

*Dep't of Com. v. New York,*
  588 U.S. 752 (2019) ............................................................................... 24

*Dept. of Homeland Sec. v. Regents of the Univ. of Cal.,*
  591 U.S. 1 (2020) ................................................................................... 32

*Evergreen Shipping Agency (Am.) Corp. v. Fed. Mar. Comm'n,*
  106 F.4th 1113 (D.C. Cir. 2024) ............................................................. 38

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009) ............................................................................... 34

*Green Rock LLC v. Internal Revenue Serv.,*
  104 F.4th 220 (11th Cir. 2024) ............................................................... 15

*Idaho Farm Bureau Fed'n v. Babbitt,*
  58 F.3d 1392 (9th Cir. 1995) .................................................................. 16

*Lake Carriers' Ass'n v. EPA,*
  652 F.3d 1 (D.C. Cir. 2011) .................................................................... 17

*Louisiana v. U.S. Dep't of Energy,*
  90 F.4th 461 (5th Cir. 2024) ..................................................... 30, 32, 39, 46

*Mann Constr., Inc. v. United States,*
  27 F.4th 1138 (6th Cir. 2022) ...................................................... 15, 17, 18

*Marcello v. Bonds,*
  349 U.S. 302 (1955) ............................................................................... 17

*McDonald v. Watt,*
  653 F.2d 1035 (5th Cir. 1981) ................................................................ 21

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Ins. Co.,*
  463 U.S. 29 (1983) ..................................................................... 24, 25, 32

*Nat'l Ass'n of Farmworkers Orgs. v. Marshall*,
  628 F.2d 604 (D.C. Cir. 1980) ................................................................. 16

*Nat'l Ass'n of Mfrs. v. SEC*,
  105 F.4th 802 (5th Cir. 2024) ................................................................. 34

*Nat'l Min. Ass'n v. McCarthy*,
  758 F.3d 243 (D.C. Cir. 2014) ................................................................. 15

*Nat'l Parks Conservation Ass'n v. U.S. EPA*,
  788 F.3d 1134 (9th Cir. 2015)................................................................. 33

*Nat. Res. Def. Council v. Wheeler*,
  955 F.3d 68 (D.C. Cir. 2020)................................................................. 16

*New England Health Care Emps. Union v. NLRB*,
  448 F.3d 189 (2d Cir. 2006)................................................................. 34

*NLRB v. Wyman-Gordon Co.*,
  394 U.S. 759 (1969) ................................................................. 22

*Nw. Env't Def. Ctr. v. Bonneville Power Admin.*,
  477 F.3d 668 (9th Cir. 2007) ................................................................. 34

*Outsourcing Facilities Assoc. v. U.S. FDA*,
  No. 4:24-cv-0953-P, 2025 WL 746028 (N.D. Tex. Mar. 5, 2025) ........17, 46

*Outsourcing Facilities Assoc. v. U.S. FDA*,
  No. 4:24-cv-0953, 2025 WL 1397537 (N.D. Tex. May 13, 2025).............. 33

*Omnipoint Corp. v. FCC*,
  78 F.3d 620 (D.C. Cir. 1996)................................................................. 18

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*,
  494 F.3d 188 (D.C. Cir. 2007) ................................................................. 33

*Perez v. Mortgage Bankers Ass'n*,
  575 U.S. 92 (2015)................................................................. 14, 15

*Pros. and Patients for Customized Care v. Shalala*,
  56 F.3d 592 (5th Cir. 1995) ................................................................. 20

*Pub. Citizen, Inc. v. FAA*,
  988 F.2d 186 (D.C. Cir. 1993) ................................................................ 40

*Pub. Citizen v. Nuclear Regul. Comm'n*,
  573 F.3d 916 (9th Cir. 2009) ................................................................ 19

*Safari Club Int'l v. Zinke*,
  878 F.3d 316 (D.C. Cir. 2017) ................................................... 20, 22, 23

*Shell Offshore Inc. v. Babbitt*,
  238 F.3d 622 (5th Cir. 2001) ................................................ 12, 14, 15, 23

*SKF USA Inc. v. United States*,
  630 F.3d 1365 (Fed. Cir. 2011) ................................................................ 34

*Sutter E. Bay Hosps. v. NLRB*,
  687 F.3d 424 (D.C. Cir. 2012) ................................................................ 48

*Sw. Elec. Power Co. v. EPA*,
  920 F.3d 999 (5th Cir. 2019) ............................................................ 24, 38

*Thompson v. W. States Med. Ctr.*,
  535 U.S. 357 (2002) .................................................................................. 4

*United States v. Fla. E. Coast Ry. Co.*,
  410 U.S. 224 (1973) ................................................................................ 22

*United Steel v. Mine Safety & Health Admin.*,
  925 F.3d 1279 (D.C. Cir. 2019) .............................................................. 38

*Univ. of Texas M.D. Anderson Cancer Ctr. v.
U.S. Dep't of Health and Hum. Servs.*,
  985 F.3d 472 (5th Cir. 2021) ............................................................ 13, 24

*U.S. Air Tour Ass'n v. FAA*,
  298 F.3d 997 (D.C. Cir. 2002) ................................................................ 32

*U.S. Dep't of Labor v. Kast Metals Corp.*,
  744 F.2d 1145 (5th Cir. 1984) ................................................................ 13

*W & T Offshore, Inc. v. Bernhardt*,
  946 F.3d 227 (5th Cir. 2019) ............................................................ 20, 23

xi

*Wages & White Lion Invs., L.L.C. v. U.S. FDA*,
  16 F.4th 1130 (5th Cir. 2021) ................................................. 33

**Statutory and Regulatory Authorities**

5 U.S.C. § 551 ...................................................................... 14

5 U.S.C. § 553 ......................................................... 14, 18, 20

5 U.S.C. § 559 ................................................................. 17, 18

5 U.S.C. § 706 ...................................................................... 12

21 U.S.C. § 351 ...................................................................... 5

21 U.S.C. § 353a ............................................................. 4, 5, 6

21 U.S.C. § 353b .................................................................. 5, 6

21 U.S.C. § 356c ........................................... 6, 19, 24, 25, 51

21 U.S.C. § 356e ........................................................ 5, 18, 19

28 U.S.C. § 1331 ................................................................... 3

Medicare and Medicaid Programs; Policy and Regulatory
  Revisions in Response to the COVID-19 Public Health Emergency,
  85 Fed. Reg. 19,230 (Apr. 6, 2020) (interim final rule) ............................ 18

**Other Authorities**

APhA, Frequently Asked Questions About Pharmaceutical Compounding
  (accessed Aug. 25, 2025) ..................................................... 21

Bridget C.E. Dooling, Legal Issues in E-Rulemaking,
  63 Admin. L. Rev. 893 (2011) .................................................. 19

Christopher S. Yoo & Kellen McCoy, Privacy vs. Transparency:
  Handling Protected Materials in Agency Rulemaking,
  96 Ind. L. J. 1259 (2021) ..................................................... 19

FDA, Compounding Outsourcing Facilities Annual Study (Aug. 18, 2020) .. 21

FDA, Compounding When Drugs Are on FDA's Drug Shortages List
(Dec. 18, 2024) ........................................................................ 6

FDA, Registered Outsourcing Facilities (updated July 29, 2025) ................. 21

Grace Toohey and Hayley Smith, 'Way, Way, Way Above Normal'
Rains Could Set All-Time L.A. Record as Wet Weather Continues,
L.A. Times, Apr. 1, 2024 ....................................................... 27

Heather E. Kilgore, Signed, Sealed, Protected: Solutions to Agency Handling
of Confidential Business Information in Informal Rulemaking,
56 Admin. L. Rev. 519 (2004) .............................................. 19

Lolita Paff, Financial and Managerial Accounting 335-346 (2021) ............... 27

Notice, Consumer Comments—Public Posting and Availability of
Comments Submitted to Food and Drug Administration Dockets,
80 Fed. Reg. 56,469 (Sept. 18, 2015) ..................................... 20

Notice, Procedures for Handling Confidential Information in Rulemaking,
60 Fed. Reg. 66,981 (Dec. 27, 1995) ..................................... 20

Webster's New World College Dictionary (4th ed. 2007) ........................... 51

## INTRODUCTION

This case concerns semaglutide, the active ingredient in FDA-approved GLP-1 drugs Ozempic and Wegovy that treat type-2 diabetes and obesity. Surging demand from the moment semaglutide hit the market in 2022 led the Food and Drug Administration (FDA) to declare it in shortage that year. The shortage declaration in turn loosened restrictions on compounding semaglutide. Compounding is the process by which a doctor, pharmacist, or licensed outsourcing facility combines, mixes, or alters ingredients to create medicines tailored to patient needs. For years, patient needs and market demand for semaglutide were satisfied in meaningful part by the lawful compounding of pharmacies and outsourcing facilities. During the same time period, patient needs and market demand for another in-demand GLP-1 active ingredient, tirzepatide, were also satisfied in meaningful part by lawful compounding, since FDA had listed it as in shortage in 2022 as well.

In December 2024, FDA declared the shortage of tirzepatide ended, and that decision is challenged in the related case pending before this Court, *Outsourcing Facilities Association v. FDA*, No. 25-10600 (5th Cir.). In February 2025, at the behest of Novo Nordisk Inc. (Novo Nordisk), the manufacturer of brand name semaglutide products, FDA declared that shortage over. This action challenges that determination on grounds similar to those raised in the pending case concerning tirzepatide. As in that case, FDA did not comply with the default notice-and-comment directives of the Administrative Procedure Act (APA). And, as in that case, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████████████████████████ Accordingly, FDA's delisting action concerning semaglutide is legally infirm for many of the same reasons its action concerning tirzepatide is infirm.

But this case is, if anything, the more egregious of the two because of

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ That reflects a shortage. ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ Failing even to notice the contradiction, ████████████████████████████

██████████████████████████████████

       ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



Consistent with its ruling in the tirzepatide case, the district court abandoned any meaningful concept of judicial review by buying the defendants' positions, hook, line, and sinker. ██████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████ The district court then chastised Plaintiffs for merely daring to question the infallible dictates of government. This Court should reverse the judgment below, vacate FDA's delisting decision, and remand for further agency review.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331. It granted summary judgment on all claims on June 13, 2025, ROA.5490, and entered final judgment on June 17, ROA.1046. Plaintiffs timely appealed on June 18. ROA.1086.

## STATEMENT OF ISSUES

1.    Whether agency action decreeing a prospective prohibition across an entire industry may bypass notice-and-comment rulemaking because the agency labels it an "adjudication."

2.     Whether FDA's shortage resolution is supported by substantial evidence and reasoned explanation where ███████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████

### STATEMENT OF THE CASE

**A.     Congress Authorizes Compounding to Ensure Patient Needs Are Met During Drug Shortages**

1.     Drug compounding, "a process by which a pharmacist or doctor combines, mixes, or alters ingredients to create a medication," is "a traditional component of the practice of pharmacy, and is taught as part of the standard curriculum at most pharmacy schools." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 360–61 (2002) (citation omitted). "Many States specifically regulate compounding practices as part of their regulation of pharmacies," and "[s]ome require all licensed pharmacies to offer compounding services." *Id.* The Federal Food, Drug, and Cosmetic Act (FDCA) regulates drug compounding in Sections 503A and 503B.

Titled "Pharmacy compounding," Section 503A exempts compounding at licensed pharmacies from certain FDCA requirements, including its new-drug-approval prerequisites, if multiple conditions are met. 21 U.S.C. § 353a(a). Among other things, a drug must be compounded at a licensed pharmacy "on the prescription order for [an] individual patient" or "based on a history of the licensed pharmacist or licensed physician receiving valid prescription orders for

the compounding of the drug product." *Id.* § 353a(a)(2)(A) and (B). Section 503A authorizes compounding from "bulk drug substances," which are active ingredients typically of FDA-approved drugs, so long as the pharmacy "does not compound regularly or in inordinate amounts . . . any drug products that are essentially copies of a commercially available drug product." *Id.* § 353a(b)(1)(D).

Section 503B governs "outsourcing facilities," which generally engage in larger-scale compounding than pharmacies, and exempts their compounding from the FDCA's new-drug-approval requirement and other restrictions if those facilities fulfill numerous conditions. *Id.* § 353b(a)(1) and (b). Outsourcing facilities need not be licensed pharmacies or compound in response to prescriptions or a history of prescriptions. *Id.* § 353b(d)(4)(B) and (C). They must, however, conform with stringent good manufacturing practices that do not apply to state-licensed pharmacies compounding under Section 503A. *Compare* 21 U.S.C. § 353a(a) *with id.* § 353b(a); *id.* § 351(a)(2)(B).

2. To ensure continuity in patient care, Congress authorized pharmacies and outsourcing facilities to help meet demand during drug shortages.

Section 506E requires FDA to "maintain an up-to-date list of drugs that are determined by" FDA "to be in shortage in the United States." *Id.* § 356e(a). FDA must identify "[t]he name of the drug in shortage," "[t]he name of each manufacturer of such drug," "[t]he reason for the shortage" from an enumerated list of seven categories, and "[t]he estimated duration of the shortage as determined by the Secretary." *Id.* § 356e(b)(1)–(4). The FDCA defines "drug

shortage" to mean "a period of time when the demand or projected demand for the drug within the United States exceeds the supply of the drug." 21 U.S.C. § 356c(h)(2).

A shortage listing authorizes compounding that would otherwise be prohibited. As noted, Section 503A does not protect pharmacy compounding "in inordinate amounts" of "any drug products that are essentially copies of a commercially available drug product," *id.* § 353a(b)(1)(D), but a shortage listing signals that the drug is not "commercially available," allowing pharmacies to compound copies of listed drugs. *See* FDA, Compounding When Drugs Are on FDA's Drug Shortages List (Dec. 18, 2024).[1] A shortage listing also authorizes outsourcing facilities to compound from that drug's active ingredient—which is generally otherwise prohibited—and to compound drugs that are "essentially a copy" of an approved drug, which is also generally otherwise prohibited. 21 U.S.C. § 353b(a)(2)(A)(2), (a)(5), (d)(2)(A). In plain English: pharmacies generally may copy brand-name drugs only during a shortage, and outsourcing facilities generally cannot compound from the active ingredients of brand-name drugs, except when a drug is in shortage.

---

[1]    https://www.fda.gov/drugs/human-drug-compounding/compounding-when-drugs-are-fdas-drug-shortages-list.

### B. FDA Declares Semaglutide in Shortage and Then Resolves the Shortage, Relying on Novo Nordisk's Evidence While Waving Away All Other Evidence

1. Semaglutide is the active ingredient of FDA-approved prescription drugs that treat type-2 diabetes and obesity. Semaglutide is manufactured by Novo Nordisk Inc. (Novo Nordisk) and sold under the brand names Ozempic for diabetes treatment and Wegovy for weight loss. ROA.1168. Demand for semaglutide is exceptionally high and continues to grow rapidly. ROA.1168.

On August 23 and March 31, 2022, respectively, FDA added Ozempic and Wegovy products to the drug shortage list. ROA.1168. The listing enabled pharmacies and outsourcing facilities to satisfy patient needs for semaglutide through compounding. Since then, market demand has been met in meaningful part by compounded products.



████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████

2.      Meanwhile, Novo Nordisk lobbied FDA to declare the shortage ended, just as FDA had resolved the shortage of tirzepatide, a similar "GLP-1" drug in December 2024. On February 21, 2025, FDA acceded to this request and declared the semaglutide shortage over as well. This "**Delisting Action**" is memorialized in two documents. The "**Decision**" presents the agency's evidence and reasoning. ROA.1165. The "**Order**" summarizes the agency's rationale and provides enforcement discretion for pharmacies and outsourcing facilities to continue compounding for, respectively, 60 and 90 days. ROA.1224. At the time FDA issued the Delisting Action, a preliminary injunction motion was pending, and had not been resolved, challenging its order resolving the tirzepatide shortage.

The Delisting Action rests on ███████████████████████ ████████████████████████████████████████████ As described below, ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



*See infra* Argument § II.B.1.

## C. The District Court Upholds the Delisting Action

Plaintiff North American Custom Laboratories, LLC, doing business as FarmaKeio Custom Compounding ("FarmaKeio"), is a pharmacy that compounded semaglutide in reliance on the shortage listing. ROA.17. Plaintiff Outsourcing Facilities Association (OFA) is a trade association representing outsourcing facilities. ROA.17. OFA members compounded tirzepatide in reliance on FDA's shortage listing. Plaintiffs filed this action on February 24, 2024, ROA.36, and subsequently moved for a preliminary injunction, ROA.1132. In the meantime, Novo Nordisk intervened, ROA.139, and the parties agreed to a protective order to permit Plaintiffs' counsel to receive the

sealed Decision and a briefing schedule on the request for provisional relief. ROA.199–200. During briefing, FDA produced the administrative record, ROA.1202, and Plaintiffs were able to file and rely on portions of it for their reply brief.

On April 24, the district court denied Plaintiffs' preliminary injunction motion, largely adopting the approach and reasoning of its previous ruling in the related tirzepatide litigation. ROA.5178–5193. The court, for example, incorporated its prior ruling that notice-and-comment rulemaking is not required for delisting actions. *See also* ROA.5183–5184. The court found that FDA's explanation was sufficient to support the Delisting Action, even though it observed that ████████████████████████████████████████

████████████████████████████████████████████████

████████████

The case proceeded to adjudication on cross-motions for summary judgment. Plaintiffs carried forward the arguments presented at the preliminary-injunction stage, given that they had not all been resolved. On June 13, 2025, the district court issued a final order ruling in favor of FDA and Novo Nordisk and against Plaintiffs. ROA.5490–5500. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ The district court entered final judgment, and Plaintiffs appealed.

This case has been marked related to *Outsourcing Facilities Association v. FDA*, No. 25-10600 (5th Cir.), which is proceeding ahead of this case. As the Court can see, arguments in this brief overlap with those Plaintiffs have made in that case, and some issues in this case are likely to be resolved by the decision in that appeal.

## SUMMARY OF THE ARGUMENT

I.     FDA unlawfully promulgated the Delisting Action without notice-and-comment rulemaking. It is a substantive rule that makes previously lawful conduct unlawful and therefore triggers the APA's default notice-and-comment obligation, which the FDCA does not displace. While FDA labels the Delisting Action an adjudication, it bears all hallmarks of a rule. It is generally applicable to a large industry of unspecified regulated entities and does not adjudicate the rights of any named parties. And it creates a prospective, legislative bar on activity rather than decides the legality of anyone's past activities. FDA cannot circumvent the APA's rulemaking requirements by slapping the "adjudication" label on what is by all measures a rule.

II.     FDA also violated the APA by declaring the shortage over without coherent findings satisfying statutory command, sufficient factual basis, or reasoned consideration of a mountain of contrary evidence. ██████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

Moreover, ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████ This cannot survive APA review, and the district court erred in effectively giving the agency a blank check to act with no meaningful judicial review.

## STANDARD OF REVIEW

"This Court reviews the district court's grant of summary judgment *de novo*." *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 627 (5th Cir. 2001). In reviewing the underlying agency decision, "the general standard under the APA is whether the agency's final decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). However, determining whether the Delisting Action "was a 'rule' for APA purposes is purely a matter of construction of the APA and [this Court] review[s] this issue *de novo*." *Id.* The Court exercises "searching and careful" review under the APA to assess whether "an agency examine[s] the relevant data and

articulate[s] a satisfactory explanation for its action." *Univ. of Texas M.D. Anderson Cancer Ctr. v. U.S. Dep't of Health and Hum. Servs.*, 985 F.3d 472, 475 (5th Cir. 2021) (citation omitted).

## ARGUMENT

## I. The Delisting Action Was Unlawfully Promulgated Without Notice-and-Comment Rulemaking

FDA erroneously issued the Delisting Action without notice-and-comment rulemaking. The Delisting Action is a substantive rule—it makes previously lawful conduct unlawful—and not the product of an "adjudication," as FDA erroneously contends.

This issue is substantially identical to the first issue presented to this Court in the related action *Outsourcing Facilities Ass'n v. FDA*, No. 25-10600, and the district court incorporated its prior ruling in deciding the issue in this case. ROA.5492; ROA.5183–84. Because the Court's resolution of the issue in the related matter will likely be dispositive here, Plaintiffs refer the Court to their more fulsome briefing in that case. Opening Br. 13-27, *Outsourcing Facilities Ass'n v. FDA*, ECF No. 56. They briefly recite their arguments here to ensure they are adequately preserved.

### A. The Delisting Action Is a Rulemaking

Congress imposed the APA's notice-and-comment procedures "to give the public an opportunity to participate in the rule-making process" and "enable[] the agency promulgating the rule to educate itself" before taking actions that "have a substantial impact on those who are regulated." *U.S. Dep't*

13

*of Labor v. Kast Metals Corp.*, 744 F.2d 1145, 1153 n.17 (5th Cir. 1984) (quotation marks omitted). To those ends, the APA prescribes a "three-step procedure." *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015). "First, the agency must issue a '[g]eneral notice of proposed rule making,' ordinarily by publication in the Federal Register." *Id.* (quoting 5 U.S.C. § 553(b)). Second, "the agency must 'give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments.'" *Id.* (quoting 5 U.S.C. § 553(c)). The agency then "must consider and respond to significant comments." *Id.* And, third, the final rule must include "'a concise general statement of [its] basis and purpose.'" *Id.* (quoting 5 U.S.C. § 553(c)). These procedures are generally applicable and are required for the promulgation of what are known as "substantive" or "legislative" rules—that is, "those which create law." *Shell Offshore*, 238 F.3d at 628.

1.     The Delisting Action is a substantive rule subject to the APA's notice-and-comment mandate. To begin with, it is a rule. The APA defines "rule" to include "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy," 5 U.S.C. § 551(4), and that reaches "virtually every statement an agency may make," *Apter v. Dep't of Health and Hum. Servs.*, 80 F.4th 579, 590 (5th Cir. 2023). The Delisting Action is a statement of general applicability to all compounders that prescribes law by prohibiting most semaglutide compounding. Specifically, the action prohibits all compounding of semaglutide by outsourcing facilities and prohibits pharmacies from

14

compounding drugs that are essentially a copy of brand-name tirzepatide products.

The Delisting Action is a substantive rule because it has "the 'force and effect of law.'" *Perez*, 575 U.S. at 96. In other words, it "affect[s] individual rights and obligations." *Shell Offshore*, 238 F.3d at 628 (quotation marks omitted); *see also Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1143 (6th Cir. 2022) (explaining that a substantive rule is one that "impose[s] new rights or duties and change[s] the legal status of regulated parties"). The Delisting Action changed the law, and affected the rights of compounders, by making a previously lawful activity (compounding semaglutide) unlawful on a prospective basis, no different in force and effect than if Congress had enacted a statute prohibiting that activity. This is a rule.

This conclusion is straightforward. Agency action erecting a new legal prohibition is the classic example of a substantive rule. *See Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014). More specifically, many statutory schemes base legal consequences on agencies' listing decision that have consistently been recognized as substantive rules subject to notice and comment. For example, recent decisions of the Sixth and Eleventh Circuits hold that the IRS's actions adding new items to a list of presumptively abusive transactions, which trigger reporting requirements, were substantive rules and invalid without notice-and-comment procedures. *Green Rock LLC v. Internal Revenue Serv.*, 104 F.4th 220 (11th Cir. 2024); *Mann Constr.*, 27 F.4th at 1138. The EPA's adding a site on the CERCLA "national priorities list," which then triggers various

15

remedial obligations, is a substantive rule subject to the APA's notice-and-comment procedures. *See Anne Arundel Cnty. v. U.S. EPA*, 963 F.2d 412 (D.C. Cir. 1992). So too are actions adding species to the lists of threatened and endangered species under the Endangered Species Act. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1401–04 (9th Cir. 1995); *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 698 F. Supp. 3d 39 (D.D.C. 2023); *Ctr. for Biological Diversity v. Everson*, 435 F. Supp. 3d 69 (D.D.C. 2020). And so too are actions adding pesticides to the list of those safe to use around younger workers. *Nat'l Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604 (D.C. Cir. 1980). Removing items from lists, where doing so changes the law, is identically subject to notice-and-comment procedures; that includes, for example, EPA's action suspending the listing of hydrofluorocarbons as an unsafe substitute for ozone-depleting substances prohibited under Clean Air Act. *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020) (vacating action on that basis).

It is easy to see why such listing and delisting actions are rules. There is no difference between an agency rule providing that "compounding of semaglutide is prohibited" and an agency action removing semaglutide from a list of substances that may lawfully be compounded. In either instance, the agency has changed the law by promulgating a new legal prohibition. To change the law, an agency must follow the APA's notice-and-comment procedures.

2. Nothing in the FDCA displaces the APA's notice-and-comment procedures for FDA's shortage listing and delisting actions. "Before an agency may regulate without the protections of the notice-and-comment process, it must

16

show that Congress 'expressly' carved out the exception." *Mann Constr.*, 27 F.4th at 1144 (quoting 5 U.S.C. § 559). Such exemptions "are not lightly to be presumed," *Marcello v. Bonds*, 349 U.S. 302, 310 (1955); instead, "Congress's *intent to make a substantive change* [must] be clear," *Ass'n of Data Processing Serv. Orgs. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 686 (D.C. Cir. 1984) (citation omitted). Importantly, it is *not* enough that a statute prescribes procedures that cover some of the same ground as the APA procedures (such as publication) but are not incompatible with them. *See, e.g.*, *Lake Carriers' Ass'n v. EPA*, 652 F.3d 1, 6 (D.C. Cir. 2011) (Clean Water Act's express notice-and-comment process did not excuse EPA "from providing an additional round of notice and comment" before promulgating final permits); *Mann Constr.*, 27 F.4th at 1145–46 (reporting and disclosure regime did not displace APA's notice-and-comment requirements); *Citizens for Resp. and Ethics in Washington v. FEC*, 993 F.3d 880, 890 (D.C. Cir. 2021) (enforcement provisions of Federal Election Campaign Act did not displace APA's default judicial-review provisions).

Section 506E bespeaks no intent, let alone a clear one, to displace notice-and-comment procedures entirely. The district court in the related action concerning tirzepatide correctly recognized that the FDCA "is seemingly silent as to what procedure the FDA must use to make its shortage determinations." *Outsourcing Facilities Assoc. v. U.S. FDA*, No. 4:24-cv-0953-P, 2025 WL 746028, at *4 (N.D. Tex. Mar. 5, 2025) ("*OFA I*"). But silence is the opposite of an *express* exemption. While neither FDA nor the district court directly argued to the contrary, they indirectly claimed displacement by noting that FDA must

"maintain an up-to-date list of drugs that are determined . . . to be in shortage," 21 U.S.C. § 356e(a), and that FDA may rely on confidential information of drug manufacturers in assessing shortages. These directives are insufficient to establish that Section 506E "expressly" supersedes the default notice-and-comment requirement. 5 U.S.C. § 559. Moreover, both directives are "compatible" with notice-and-comment processes. *Mann Constr.*, 27 F.4th at 1145. The APA specifically authorizes agencies to forgo notice-and-comment for "good cause" and to refrain from publishing rules "exempted from disclosure by statute." 5 U.S.C. § 553(b)(B). This flexibility empowers FDA to immediately list a drug when evidence of a shortage suddenly appears and to keep submitted information sealed.

Indeed, agencies routinely act with great dispatch in rulemaking. FDA has relied on the APA's "good cause" exception to address temporary or urgent needs through, for example, interim final rules. *E.g.*, Medicare and Medicaid Programs; Policy and Regulatory Revisions in Response to the COVID-19 Public Health Emergency, 85 Fed. Reg. 19,230 (Apr. 6, 2020) (interim final rule by FDA's sister agency making temporary changes to Medicare and Medicaid rules during pandemic). And agencies have employed shorter-than-usual comment periods where statutes directed expedition. *See Omnipoint Corp. v. FCC*, 78 F.3d 620, 629 (D.C. Cir. 1996) (approving seven-day comment period where Congress directed agency to act "without . . . delays"). This flexibility precludes any claim of conflict between the APA's rulemaking requirements and the statutory scheme here. Section 506E expressly contemplates that shortages may

result from events providing more-than-adequate time for notice and comment, including "[d]iscontinuance of the manufacture of a drug," delays in bringing compliant manufacturing capacity online, regulatory delays, and demand growth. 21 U.S.C. § 356e(b)(3). Consistent with that understanding, the related reporting requirement of Section 506C allows "30 calendar days" and "40 calendar days" for action in instances where manufacturers may have failed to provide notification of a shortage. 21 U.S.C. § 356c(e) and (f)(2)–(3). There's ample time for notice and comment in most instances—including *all* shortage resolutions—and the "good cause" exception clearly covers any abrupt shortage. The district court was therefore incorrect believing a notice-and-comment process would require the agency to rely on data that is "seven-months old." ROA.5184.

Likewise, agencies routinely accept, consider, and protect confidential materials in APA notice-and-comment rulemakings. *See generally* Heather E. Kilgore, Signed, Sealed, Protected: Solutions to Agency Handling of Confidential Business Information in Informal Rulemaking, 56 Admin. L. Rev. 519 (2004); Christopher S. Yoo & Kellen McCoy, Privacy vs. Transparency: Handling Protected Materials in Agency Rulemaking, 96 Ind. L.J. 1259 (2021); Bridget C.E. Dooling, Legal Issues in E-Rulemaking, 63 Admin. L. Rev. 893, 911–13 (2011); *Pub. Citizen v. Nuclear Regul. Comm'n*, 573 F.3d 916, 928 (9th Cir. 2009) (holding that an agency properly relied on "classified information about nuclear facilities" in rulemaking). FDA itself has published "Procedures for Handling Confidential Information in Rulemaking," which

19

apply to all FDA "rulemaking." Notice, Procedures for Handling Confidential Information in Rulemaking, 60 Fed. Reg. 66,981, 66,981 (Dec. 27, 1995); *see also* Notice, Consumer Comments—Public Posting and Availability of Comments Submitted to Food and Drug Administration Dockets, 80 Fed. Reg. 56,469 (Sept. 18, 2015) (updating 1995 policy). FDA's claimed bases for displacement therefore fail.

## B.    The Delisting Action Is Not the Proper Subject of Adjudication

Unwilling to conduct a public rulemaking, FDA insists that its Delisting Action is "the product of an informal adjudication." ROA.1228. The district court erred in blessing this superficial repackaging.

For many of the reasons that it qualifies as a substantive rule, the Delisting Action "bear[s] all the hallmarks . . . of rulemaking, not adjudication." *City of Arlington, Tex. v. FCC,* 668 F.3d 229, 242 (5th Cir. 2012). "An agency may not escape the requirements of § 553 by labeling its rule an 'adjudication.'" *Safari Club Int'l v. Zinke*, 878 F.3d 316, 332 (D.C. Cir. 2017). An "agency's characterization of its own [action]" is due "minimal" deference; instead, "courts focus primarily on the actual characteristics of the agency action." *W & T Offshore, Inc. v. Bernhardt*, 946 F.3d 227, 237 (5th Cir. 2019) (citation and alteration marks omitted); *see also Pros. and Patients for Customized Care v. Shalala*, 56 F.3d 592, 596 (5th Cir. 1995). Two features of the Delisting Action establish that it is a rule, not the product of adjudication.

First, the Delisting Action creates a generally applicable legal prohibition, which "is classic rulemaking." *City of Arlington*, 668 F.3d at 243. Adjudications

typically "resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals." *Id.* at 242 (quotation marks omitted); *see also McDonald v. Watt*, 653 F.2d 1035, 1042 (5th Cir. 1981) ("The existence of a dispute concerning particular individuals is a distinguishing characteristic of adjudication."). The Delisting Action is generally applicable and indiscriminately affects the rights of thousands of pharmacies and outsourcing facilities. The American Pharmacists Association reports that "about 7,500 pharmacies specialize in compounding," not including compounding pharmacies in hospitals and other health care facilities.[2] FDA identifies 92 outsourcing facilities,[3] including large facilities engaged in "high-volume" production.[4] This was not an adjudication of "the rights of a small number of parties properly before [the agency]." *City of Arlington*, 668 F.3d at 243.

In fact, *none* of the pharmacies and facilities whose rights were the object of this so-called "adjudication" were party to it. "No effort was made to single out any particular [compounder] for special consideration based on its own

---

[2] APhA, Frequently Asked Questions About Pharmaceutical Compounding (accessed Aug. 25, 2025), https://www.pharmacist.com/Practice/Patient-Care-Services/Compounding/Compounding-FAQs.

[3] FDA, Registered Outsourcing Facilities (updated July 29, 2025), https://www.fda.gov/drugs/human-drug-compounding/registered-outsourcing-facilities (content current as of Aug. 13, 2025).

[4] FDA, Compounding Outsourcing Facilities Annual Study (Aug. 18, 2020), https://www.fda.gov/media/163704/download.

peculiar circumstances." *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 246 (1973). Novo Nordisk was also not a party to this "adjudication," and neither the Decision nor Order identify it as one.[5] The Decision and Order identify no parties and do not apply any legal rule or determination to any person. There was no adjudication here. FDA simply announced a new legal restriction applicable to an entire industry. That is a rule. *Compare NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 765–66 (1969) (plurality op.) (holding agency was required to proceed through APA rulemaking when it "purported to make a rule"—that is, "exercise its quasi-legislative power"—through adjudication).[6]

Second, the Delisting Action creates a future prohibition rather than evaluates past actions. "[R]ules generally have only 'future effect' while adjudications immediately bind parties by retroactively applying law to their past actions." *Safari Club*, 878 F.3d at 333; *see also City of Arlington*, 668 F.3d at 243 (emphasizing that FCC order "would apply prospectively"). As Justice Scalia put it, "[a]djudication deals with what the law was; rulemaking deals with what the law will be." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 221 (1988) (Scalia, J., concurring). The Delisting rule's effect is, as FDA recognizes, purely prospective. ROA.1232-35 (addressing the "Status of Compounding Following

---

[5] As relevant to Novo Nordisk's exclusion, the legal prohibitions triggered by a delisting apply only to compounders, not a manufacturer like Novo Nordisk.

[6] *See also id.* at 777 (Douglas, J., dissenting) (agreeing with holding); *id.* at 780 (Harlan, J., dissenting) (same).

this Decision"). It announces "a new requirement that is, in effect, a new 'substantive' rule." *Shell Offshore*, 238 F.3d at 627.

In these respects, the Delisting Action is indistinguishable from the *faux* adjudicatory orders *Safari Club* held to be rules. At issue were two Fish and Wildlife Service "findings" that the agency lacked sufficient information to conclude that sport-hunting of Zimbabwean elephants enhanced the species' survival, triggering an import ban on trophies. 878 F.3d at 323–24. These findings, the court concluded, "had all of the qualities of a legislative rule." *Id.* at 332. First, they "applied to all potential imports of sport-hunted elephant trophies from Zimbabwe, not to any individual parties." *Id.* Indeed, they "did not adjudicate any dispute between specific parties." *Id.* Second, the resulting import-ban applied only "in future permitting adjudications and enforcement actions" regarding conduct "going forward," with no "retroactive" effect on completed conduct. *Id.* Third, the agency had not "made its findings in the course of" adjudicating a party's rights, but "simply established a standard binding on the agency—a negative enhancement finding and ban on imports— to be applied to future [proceedings], until such time as the Service decides to issue a new rule based on different information." *Id.* at 334. FDA's Delisting Action shares all of these features. Accordingly, it should be set aside. *W & T Offshore*, 946 F.3d at 237 ("Substantive rules not subjected to notice and comment may not be enforced against a party.").

## II.    The Delisting Action Is Arbitrary and Without a Reasoned Basis

FDA also violated the APA by resolving the shortage without coherent findings, a sufficient factual basis, or a proper implementation of the statutory directive. "[I]n order to permit meaningful judicial review, an agency must 'disclose the basis' of its action." *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019) (citation omitted). Courts, in turn, "must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted). Review under this standard of "the factual basis for an agency's conclusions . . . is functionally the same as the 'substantial evidence' test used to evaluate formal agency action under 5 U.S.C. § 706(2)(E)." *Amin v. Mayorkas*, 24 F.4th 383, 393 (5th Cir. 2022). Agency decision-making fails this standard if it "fails to account for 'relevant factors' or evinces 'a clear error of judgment,'" *Univ. of Texas M.D. Anderson Cancer Ctr.*, 985 F.3d at 475 (citation omitted), such as where it is "[i]llogic[al] and internally inconsistent," *Chamber of Com. of U.S. of Am. v. U.S. Dep't of Lab.*, 885 F.3d 360, 382 (5th Cir. 2018); *see also Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1016 (5th Cir. 2019) (same).

The Delisting Action falls far short. █████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

██████████████████████████████████████████████

██████ Critical underpinnings of the Decision are therefore unjustified, and many of them make little sense as means to get at the shortage question. ████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

That is not reasoned decision-making, and the district court's *post hoc* justifications cannot save the Delisting Action.

    **A.**   ██████████████████████████████████████

    1.   ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████ the Supreme Court has "frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner." *State Farm*, 463 U.S. at 48. ████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████

████ ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████ This alone requires vacatur.

2.   ███████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

████ ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

  █████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████  ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

---

[7] *Cf.* Grace Toohey and Hayley Smith, 'Way, Way, Way Above Normal' Rains Could Set All-Time L.A. Record as Wet Weather Continues, L.A. Times, Apr. 1, 2024, https://www.latimes.com/california/story/2024-04-01/another-wet-winter-set-record-water-year-second-in-history.

[8] Available at https://psu.pb.unizin.org/acctg211/; *see also* 2.6 Accounting for Inventory in Financial and Managerial Accounting, Penn State Univ., https://psu.pb.unizin.org/acctg211/chapter/periodic-v-perpetual-inventory/ (2.6 Accounting for Inventory) (last visited Aug. 23, 2025).



This illustrates why courts are not supposed to backfill explanations and reasoning for agency action. *See infra* Argument § II.A.3.



██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████

  ████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

          ████████████████████████████████

| ████ | ████████████ | ████████████ | ████████ |
|------|------|------|------|
| ████ | ████ | ████ | ████ |
| ██████ | ████ | ████ | ██ |
| ██████ | ████ | ████ | ██ |
| ████ | ████ | ████ | █ |
| ████ | ████ | ████ | ████ |

---

████████████████████████████████████████████████ *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 469 (5th Cir. 2024) ("*Louisiana v. DOE*").

█ ████████████████████████████████████████████████████████
████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████

   3.   ████████████████████████████████

███████████████████████████████████

████████████████████████ That type of omission dooms

agency action. *State Farm*, 463 U.S. at 50; *Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 27–30 (2020); *Louisiana v. DOE*, 90 F.4th at 473; *Corrosion Proof Fittings v. EPA*, 947 F.2d 1201, 1226–27 (5th Cir. 1991), *opinion clarified* (Nov. 15, 1991). For example, this Court rejected the Department of Energy's repeal of conservation standards where "several alternatives" were available "but DOE ignored all of them," failing to explain why its ultimate choice beat out other possibilities. *Louisiana v. DOE*, 90 F.4th at 476. And the D.C. Circuit vacated flight restrictions by the Federal Aviation Administration over the Grand Canyon to achieve "natural quiet" measured by "the average annual day" because the agency did not explain why it chose that measure over an "any given day" measure. *U.S. Air Tour Ass'n v. FAA*, 298 F.3d 997, 1015–18 (D.C. Cir. 2002); *see also Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor*

*Carrier Safety Admin.*, 494 F.3d 188, 202–06 (D.C. Cir. 2007) (rejecting regulations governing commercial driving hours because they were based on a model that used an aggregate measure inconsistently, plotted the aggregate figure in an unjustified manner, divided the crash risk estimate by an average risk estimate, and ignored the potential factor of cumulative fatigue—all without explanation); *Nat'l Parks Conservation Ass'n v. U.S. EPA*, 788 F.3d 1134, 1143 (9th Cir. 2015) (rejecting EPA decision that left the "reader wondering what metric, if any, EPA used to determine" best available retrofit technology, "or if EPA employed no metric, why not"). ████████████████████

████████████████████████████████████████████

████████████████████

Ultimately, the district court appeared to follow the view it stated in the related litigation concerning tirzepatide that "the general proposition that agencies are required to explain their rejection of reasonable alternatives that were proposed during the comment period." *Outsourcing Facilities Assoc. v. U.S. FDA*, No. 4:24-CV-0953-P, 2025 WL 1397537, at *6 (N.D. Tex. May 13, 2025). This view is incorrect, even assuming for the sake of argument that FDA properly labeled its rulemaking an adjudication. *But see supra* Argument § I. "[A]djudication is subject to the requirement of reasoned decisionmaking as well," *Allentown MackSales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998), which—as FDA knows—is "the same standard of reasonableness as [governs] notice and comment rulemaking," *Wages and White Lion Invs., L.L.C. v. U.S. FDA*, 16 F.4th 1130, 1140 (5th Cir. 2021) (quoting *Circus Circus Casinos, Inc. v.*

*NLRB*, 961 F.3d 469, 476 (D.C. Cir. 2020)); *see also New England Health Care Emps. Union v. NLRB*, 448 F.3d 189, 195–96 (2d Cir. 2006) (requiring "adequate reasoning"); *Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 688–89 (9th Cir. 2007) (evaluating "rational decision-making process"); *SKF USA Inc. v. United States*, 630 F.3d 1365, 1374–75 (Fed. Cir. 2011) (assessing "overall reasonableness"). FDA's failure to explain the reasons behind the core parameters of its Decision is as fatal in the adjudication setting as it would be in the rulemaking setting.

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████ "the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Nat'l Ass'n of Mfrs. v. SEC*, 105 F.4th 802, 811–814 (5th Cir. 2024) (finding agency departure from past findings without adequate and reasonable explanation arbitrary and capricious). ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████, and the district court erred in failing to require it to do so.

**B.**

**1.**



██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

Agency decision-making fails APA review if it is "illogical and internally inconsistent." *Chamber of Com. of U.S. of Am.*, 885 F.3d at 382 (cleaned up); *see also Sw. Elec. Power Co.*, 920 F.3d at 1016 (same). Accordingly, self-contradictory explanations in agency opinions have consistently been rejected in precedent. *See, e.g.*, *Chamber of Com. of United States v. U.S. SEC*, 85 F.4th 760, 778 (5th Cir. 2023) (rejecting securities rule requiring issuers to report share repurchase data because the agency at once claimed the rule promoted disclosure of "useful" information and that such disclosures "would *not* contain valuable information"); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1283–84 (D.C. Cir. 2019) (rejecting regulation permitting workers' entry in a mine before safety inspections concluded as incompatible with the agency's prior finding that entering mines during inspections created safety risks); *Evergreen Shipping Agency (Am.) Corp. v. Fed. Mar. Comm'n*, 106 F.4th 1113, 1114, 1118 (D.C. Cir. 2024) (rejecting agency ruling that it was "unjust and unreasonable" for a shipping company to impose contractual charges for the late return of equipment when the relevant port was closed because its rationale— that the charges would create logjams by incentivizing a rush to return

equipment—contradicted the agency's prior finding that such charges had no incentivizing effect). ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ But arbitrary-and-capricious review is not so "toothless." *Louisiana v. DOE*, 90 F.4th at 470 (citation omitted).

**2.** ████████████████████████████████████████
████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████. But it is required to address "relevant" and "significant" evidence, *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (cited by district court at ROA.5495), ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

**3.**

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████ This failing alone calls for vacatur of the Decision.

█████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████





██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ FDA recently lost the argument that communications on the administrative record could satisfy the reasoned-decision-making standard where the information was omitted from the decision "itself." *See Bonumore, Inc. v. U.S. FDA*, 747 F. Supp. 3d 211, 231 (D.D.C. 2024). ██████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ ████████████████████

████████



**C.** ████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████

1.  ███████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████



2.



**CONCLUSION**

The Court should reverse the district court's judgment and direct vacatur of the Delisting Action and remand to FDA.

August 25, 2025                          Respectfully submitted:

TY DOYLE                                 /s/ Andrew M. Grossman
BAKER & HOSTETLER LLP                    ANDREW M. GROSSMAN
811 Main Street, Suite 1100              RICHARD B. RAILE
Houston, TX 77002                        KRISTIN A. SHAPIRO
(713) 646-1374                           MARC N. WAGNER
tgdoyle@bakerlaw.com                     BENJAMIN D. JANACEK
                                         BAKER & HOSTETLER LLP
                                         Washington Square, Suite 1100
                                         1050 Connecticut Ave., N.W.
                                         Washington, D.C. 20036
                                         (202) 861-1697
                                         agrossman@bakerlaw.com

                                         *Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I certify that on August 25, 2025, I filed the foregoing with the Court's
CM/ECF system, which will automatically send an electronic notice of filing to
all counsel of record.

Dated: August 25, 2025

/s/ Andrew M. Grossman
Andrew M. Grossman
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.,
Suite 1100
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g) and 5th Cir. R. 32.3, I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and 5th Cir. R. 32.2 because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 12,253 words.

Pursuant to Fed. R. App. P. 32(g) and 5th Cir. R. 32.3, I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Calisto MT font.

Dated: August 25, 2025

/s/ Andrew M. Grossman
Andrew M. Grossman
Baker & Hostetler LLP
1050 Connecticut Ave., N.W.,
Suite 1100
Washington, D.C. 20036
(202) 861-1697
agrossman@bakerlaw.com